# THE PEOPLE OF THE STATE OF NEW YORK ex rel. RICHARD J. MORGAN and Others v. DANIEL G. ROLLINS, Esq., Surrogate of the City and County of New York.

*Surrogate — power of, over a final accounting — when he should proceed with it although one of the grounds of the objection made therein, presents a question which he has not jurisdiction to hear and determine, and an action to obtain a determination thereof has been brought in the Supreme Court.*

Charles Morgan died leaving a will by which he devised and bequeathed all his property, real and personal, as provided by the laws of the State of New York in cases of intestacy.    Upon the final accounting of the executrix before the surrogate of New York, it was objected that she had not included in her accounts seventy-five hundred shares of stock transferred by the testator to three of his descendants prior to his death.

It was claimed, first, that the transfer of these shares had been procured by fraud or undue influence, and

Second, that they were advancements which should be deducted from the shares of his estate, which the transferees were entitled to take under his will.

It appeared that an action had been commenced in the Supreme Court against the executor of the will and the donees of the shares, to set aside the gifts upon the first ground of objection, viz., as having been wrongfully obtained.

The surrogate thereupon declined to decide whether the second objection, viz., that they were advancements and should be deducted from the shares of the donees, was well taken, until the question presented by the action in the Supreme Court, over which that court had jurisdiction, and the Surrogate Court had not, should be first decided by the Supreme Court.

A writ of *mandamus* was thereupon applied for to compel the surrogate to decide that portion of the controversy submitted to him.

*Held*, that the application should be granted and the writ of *mandamus* issue. (Davis, P. J., dissenting.)

Where a court has acquired jurisdiction over a subject-matter and the parties in interest, in the course of the exercise of its rightful authority, it is its duty to proceed with the hearing until a final determination is made of the matters presented for its consideration and under its control, unless it be prevented from so doing by an injunction or some other legal process rendering such a proceeding impracticable.

A mere objection, or an objection followed by an ineffectual action in another court, will not justify a delay or refusal to exercise its own rightful authority. (Davis, P. J., dissenting.)

Motion for a writ of peremptory *mandamus* requiring the surrogate of New York to decide and determine certain questions raised upon the settlement of the accounts of Mary J. Morgan, as executrix of the last will and testament of Charles Morgan, deceased. The application was made in behalf of two daughters and a grandson of the deceased.

The writ of *mandamus* has been applied for in order to obtain the direction of this court requiring the surrogate to decide a portion of the controversy submitted to him on the settlement of the accounts of the executrix of the estate of Charles Morgan, deceased. By the will of the testator he gave, devised and bequeathed all his property, real and personal, as provided by the laws of the State of New York in cases of intestacy, and in the course of the accounting it was made to appear that prior to the time of his decease he had transferred to each of the three relators 7,500 shares of the Morgans' Louisiana and Texas Railroad and Steamship Company stock. These shares had been transferred by written or printed instruments, subscribed by the testator, and they had been recorded in the books of the corporation. When the executrix presented her account for settlement, it did not include any of these shares. Objections were filed to this omission on the part and in behalf of other persons interested in the distribution of the estate, and in support of those objections it was claimed that the transfers of these shares had been procured by fraud practiced upon, or undue influence exercised over the testator. It was also claimed under the terms of the will by which the property of the testator was disposed of, according to the laws of the State in cases of intestacy, that they were advancements made to the relators respectively, and their amounts should therefore be deducted from the distributive shares

of the respective relators, or applied upon the legacies provided for them in this manner by the will.

The surrogate declined to determine whether these latter objections were well taken, until the objection that the transfers of the stock were obtained by means of fraud or undue influence should be disposed of by the action of another court having jurisdiction over controversies of that description.

Upon the former hearing of this matter it was directed that a writ of *mandamus* issue requiring the surrogate of New York to proceed to hear and decide the matters over which he had jurisdiction in the proceedings above referred to. On the application of the respondents a reargument was ordered, after hearing which the following opinions were delivered :

*F. N. Bangs*, for the relator.

*John S. Davenport*, for the executrix of Charles Morgan, deceased.

DANIELS, J. :

This case has again been brought to the attention of the court, upon the supposition that a misunderstanding entered into the decision as to the fact of an action having been commenced for the determination of the truth of the allegation, that the persons to whom the testator had delivered the stock in controversy obtained it from him by means of undue influence. As the case was pre sented there was a reference to the fact that an action had been commenced, but the fact was not stated in such a manner as to show what the action was, how or by whom it had been commenced, or who were the parties to be affected by it. All that was stated in the affidavit upon this subject was by way of reference to the surrogate's conclusion, that the validity of all the gifts should be left unaffected by him and could be determined in an action stated to be then pending in the Supreme Court, or in such other action appropriate for that purpose as the parties in interest might be advised to bring. That such a suit had been instituted was not otherwise set forth than in this inferential manner. And the conclusion of the surrogate, in his opinion, was equally as indefinite. It was there stated in the same manner that the validity of the gifts would be left unaffected by his decree, and could be determined in the action

pending in the Supreme Court, or in such other action appropriate for the purpose as the parties in interest might be advised to bring. Neither of these were such statements as showed that any action had been brought in which the validity of the gifts would be tried and determined. While it appeared from the statements of the affidavit that the surrogate had declined to proceed with the investigation and determination of the question, whether the shares were advancements to the persons receiving them or delivered in ademption of legacies, simply for the reason that it was claimed before him that they had been obtained by means of undue influence exercised over the testator prior to the time of the delivery of the shares by him. It is stated in the affidavit that this claim had been made, "and the said surrogate thereupon determined and decided that it was incumbent upon him to recognize the existence of the claim last mentioned, viz., that the said transfers were procured by fraud and undue influence, and the fact that its establishment would defeat the gifts whose validity it disputed, and that it was accordingly incumbent upon him to suspend the proceedings before him for a distribution of the estate, so far as such proceedings related to the said 22,500 shares, until another tribunal has acted in the premises." It was further stated that the surrogate had concluded to withhold the direction for the distribution of certain moneys or property "until the further decision and decree or order of the Surrogate, after the decision and determination by a decree of a court of competent jurisdiction of the questions raised by the objection, which, as stated in said decree, are neither overruled nor sustained." And that none of the parties were entitled to any determination by the surrogate's court of the question of advancement raised by the objections, nor to have any further distribution then made of the estate. The opinion of the learned surrogate proceeded upon the same view, that it was his duty to withhold his decision upon the controverted subject over which he had authority, for the reason that the claim had been made that the shares were obtained by means of undue influence. The objection and the claim alone are what were considered by him as the obstacle in the way of the exercise of his authority. It was spoken of as "the contestant's claim," and he regarded it as as his duty to suspend his action over the case until "the contestants who make this claim shall eventually prevail," and that he could not help

regarding that as "a sufficient reason why no decree should be entered." Throughout, as it has already been said in the opinion of the court, the surrogate regarded it as improper for him to proceed with the further investigation of this part of the controversy for the reason that this objection and claim had been interposed. Nothing more stood in the way of a final and complete exercise of his power and authority over the subject-matter. And that was considered, as it is now regarded, as insufficient to deprive him of his conceded statutory jurisdiction over the subject requiring his determination. In all other respects, except as to the objection that the transfers of the stock had been obtained by fraud or undue influence, the surrogate's authority was entirely complete, and he had in no manner been interfered with by any other legal proceeding, preventing him from exercising this authority. But it was declined as being the most politic in the view then taken of the case. The controlling reason assigned for that was that if it should be determined that the shares were obtained by fraud or undue influence, then the investigations would not require to be made, whether they were advancements or transfers by way of ademption of legacies. This, however, was a mere possibility which might never arise, and as the case was at the time properly before the surrogate for the exercise of his jurisdiction, and that had been in no manner affected by legal proceedings, or the interposition of the authority of another court, the parties had the right to insist upon it that the surrogate should proceed, as he certainly was at liberty to do, and hear and determine the whole controversy so far as his jurisdiction over it extended. That would be the course ordinarily deemed to be appropriate for any court of limited jurisdiction, where the action or proceeding was properly before it, to exhaust its jurisdiction unless restrained or prevented from doing so by legal proceedings necessarily attended with that effect. It may be that such a decision would be made upon one of these two objections as would render it completely operative, and in that manner dispense with an action to test the validity of the transfers on the allegation of fraud or undue influence. But if that should not be the case, as the surrogate had acquired jurisdiction over the proceedings, the parties had the right to claim that his legal investigation should be carried as far as the law would permit that to be done, before any suspen-

sion of its proceedings should take place, as long as it was not prevented by the action of another tribunal.

In the statement which has been presented since the preceding decision was announced it has been set forth that an action was commenced on the 9th of January, 1880, by parties claiming the invalidity of these transfers against the executrix and the donees of the shares, to set aside the gifts as wrongful, illegal and void. But the complaint in the action was served alone upon the executrix. To that complaint a demurrer was interposed in her behalf, and since that time no other proceedings have been had in the suit. These facts are further stated to have appeared before the surrogate, but they certainly imposed no restraint upon him or the executrix, upon whom the complaint had been served, and furnished no indication of the existence of any active design to obtain an adjudication upon the validity of the objection allowed to have effect in the proceedings before the surrogate. Neither the suit, nor anything that was done in it, interfered with his power or authority to proceed, or the right of either of the parties to require that to be done. If the pendency of such an action as this could be allowed to restrain and suspend the proceedings before the surrogate, then there would be danger that the parties interested in the distribution of the estate might never be able to accomplish that result; and no authority seems to exist which would justify the suspension of legal proceedings before any tribunal, simply because of the pendency of such an ineffectual action. And as much as that was intimated in the decision already announced. To prevent all misunderstanding on this subject, and in view of the possibilities of the pendency of an action exercising no actual restraint over the surrogate or the parties, it was said that the tribunal to which such an objection might "be presented is by the clear necessities of the case required to proceed, notwithstanding the objection to a final determination of all the matters over which its jurisdiction extends, unless its action shall be arrested and prevented from being consummated by reason of some other proceeding exercising paramount authority over it." If this statement was not intelligible it may be added, for the purpose of rendering it so, that it was intended to be held where one court has acquired jurisdiction over a subject-matter and the parties to it, in the course of the exercise of its rightful authority, that it should

proceed with the hearing until a final determination may be made of the matter committed to its consideration and control, unless that may be prevented by an injunction or some other legal process rendering such a proceeding impractical. A mere objection, or an objection followed by an ineffectual action in another court, will not be sufficient to prevent this consummation of lawful authority, and no different decision is accordingly required to be made, because of the pendency of the suspended action commenced in the Supreme Court, than that which has already been announced.

Davis, P. J. :

I think the fact that a suit was actually pending, now admitted, and to which our attention is now specially called, changes the question involved in this application. It vested the surrogate with discretion to decline to proceed with the settlement of so much of the account as was affected by the subject-matter of the contest in that suit, and that his decision is only reviewable in this court by appeal.

My concurrence in the former opinion of my brother Daniels was put altogether on the ground that no suit to test the alleged fraud and undue influence had been brought or was pending. The writ of *mandamus* ought not to issue. The surrogate has not declined jurisdiction. He has accepted it and proceeded to determine in effect that in his discretion the question whether the gifts of the stocks were advances to the donees, which should be charged against their distributory shares, ought not to be tried by him till the litigation which charges that they were obtained by undue influence and fraud has been determined by the court, which alone has jurisdiction thereof. If not content with that conclusion I think the parties must appeal from the decree of the surrogate.

Brady, J. :

I think the surrogate's power has not been interfered with, or the exercise of his jurisdiction restrained in any way, and that he should therefore proceed. An appeal from his determination, if not satisfactory, secures all rights and would be conclusive in its results equally with a judgment in the action, if one should be pronounced. I concur, therefore, with Justice Daniels.

*Mandamus* granted.